# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

PHILLEATRA GAYLOR (Pro Se),

Plaintiff

v.

OWEN SMITH, Circuit Librarian,
U.S. Court of Appeals for the Sixth Circuit;
CLARENCE MADDOX, Circuit Executive,
U.S. Court of Appeals for the Sixth Circuit;
MEGAN LYNESS, Federal Property
Manager,
U.S. General Services Administration; and
CLIFFORD L. MOSLEY, Representative,)
Environmental Health Services,

Defendants



DEC 1 6 2015

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

CASE NO. 1:15-CV-00185
(Reeves/Steger)

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Plaintiff, proceeding pro se, hereby submits her opposition to Defendants'

Supplemental Memorandum in Support of Motion to Dismiss. The main contention of

Defendants is that Plaintiff has no right of appeal in a Federal District Court—only under

the Employment Dispute Resolution Plan (here after "EDR Plan"). At no time does

Defendants' counsel say that the Defendants adhered to the terms of the EDR Plan as

intended by Congress. History reveals that Congress intended the Judiciary to have, like Congress itself, the authority to manage its own personnel and to adjudicate workplace complaints. *In re Golinski*, 587 F.3d 956, 962 (9th Cir. 2009). Indeed the judiciary is unique among the branches of government in being able to provide for itself some review of its administrative employment decision by judicial officer. *Dotson v. Griesa*, 398 F.3d 156, 176 (2d Cir. 2005). Accordingly, Defendants' motion should be denied for failure to follow the footings of the EDR Plan that permits an order to be made to provide the "necessary and appropriate" remedy for workplace discrimination. *Golinski*, 587 F.3d 956, 960.

## FACTS

Plaintiff is a former employee of the Sixth Circuit Court of Appeals. Plaintiff filed a pro se complaint claiming that her termination was wrongful due to Defendants' discriminatory and retaliatory treatment of her in violation of the **U.S. Court of Appeals for the Sixth Circuit Personnel Policies** (hereafter "Sixth Circuit Personnel Policies") and the **EDR Plan**. In the complaint, Plaintiff names several Federal employees in their official capacity who showed a "deliberate indifference" to known risks of harm and the EDR Plan that forbids discrimination and retaliation.

Retaliation is the most frequently alleged basis of discrimination in the federal sector and the most common discrimination finding in federal sector cases. The law forbids retaliation when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other term or condition of employment. The same laws that prohibit discrimination based on race,

color, sex, religion, national origin, age, disability and genetic information also prohibit

retaliation against individuals who oppose unlawful discrimination or participate in an

employment discrimination proceeding. (http://www.eeoc.gov/laws/types/retaliation.cfm)

In Plaintiff's complaint, she checked the following boxes in Doc. 1 as the nature

of her complaint which contains "race" and "retaliation" discrimination. (See below)

---

**Nature of the Case**

8.    The conduct complained about in this lawsuit involves:

    ☑ working under terms and conditions of employment that differed from similarly
       situated employees
    ☑ harassment
    ☑ retaliation
    ☑ termination of my employment
    ☑ failure to accommodate my disability

9.    I believe that I was discriminated against because of:

    ☑ my race or color, which is African American
    ☑ my disability or perceived disability, which is allergies triggered by mold that was
       not remediated after a record breaking rainy season that caused water leakage
       and flooding into the building
    ☑ my opposition to a practice of my employer that I believe violated the federal
       anti-discrimination laws

---

## ARGUMENT

### I.    Dismissal of Defendant Clifford L. Mosley.

Plaintiff concurs that Defendant Clifford L. Mosley should be dismissed from the

complaint.

### II.    Dismissal of Megan Lyness.

Plaintiff does not concur that Megan Lyness (hereafter "Lyness") should be

dismissed from the complaint. In her official capacity, Lyness had knowledge of the

environmental problems on the 2nd floor of the Joel W. Solomon Federal Building that housed the law library. Whether she knew about the discriminatory and retaliatory backdrop is unknown. Lyness' culpability lies in that she provided the ammunition (a virtually clean bill of health of Plaintiff's workplace neglecting the observable signs of mold) (Exhibits A & B). She knew her letter was deceptive because another person on the same floor had suffered internal bleeding attributed to mold. Lyness' fabrication exposed Plaintiff to sizeable levels of mold and retaliation. I concur that Lyness may be a witness to mold issues.

## III.   Dismissal of Sixth Circuit Executive and Librarian.

Plaintiff fashioned her Complaint using a Northern District of Georgia Discrimination and Retaliation Form and checked both "race" and "retaliation" as types of discrimination she suffered. Plaintiff also spoke to several attorneys who did not know how to sue Federal Judiciary officials, thus there is a big procedural void in this area of litigation. But after some research, Plaintiff assents that Federal Judiciary officials are exempt from Title VII actions. Instead, Plaintiff can note the failure of Federal Judiciary officials to follow the Judiciary's EDR tribunals in seeking redress for unlawful personnel actions. Circuit Librarian Owen Smith (hereafter "Smith") and Circuit Executive Clarence Maddox (hereafter "Maddox") from their actions, conspired to usurp the rights and protections afforded to Plaintiff by the EDR Plan.

If Defendants' counsel had read Plaintiff's amended grievance against Smith and requested a signed copy of the mediation settlement agreement written by Circuit Mediator Paul Calico, he would have seen that the mediation settlement contained no signatures. Plaintiff never received anything in writing with Smith's signature agreeing

to the mediation terms. (Exhibit C). Instead, within 24 days of the June 8, 2012 settlement email to Plaintiff, Smith drove to Chattanooga, TN and terminated Plaintiff on July 2, 2012. Since Smith did not sign the agreement as required by the EDR Plan, he egregiously felt he was not obligated to its terms. Thus, Maddox and Smith should not be dismissed from the complaint. They are the main wrongdoers of unlawful personnel actions and EDR Plan violations against Plaintiff.

## IV. Supreme Court's *Will* Case Gives Plaintiff the Right to Sue Federal Defendants in Their Official Capacity.

As stated by Hon. Judge Reeves on October 6, 2015 during the Status Conference, a suit against an employee in his/her "official capacity" is a suit against the entity. The suit is not against the employee personally. *Will v.Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff wants to emphasize that the discrimination, retaliation, and termination of her were effected by Maddox and Smith in their official capacities. Any attempt by Plaintiff to communicate an appeal to the Chief Judge was aborted by Maddox. (Exhibit D).

## V. All Facts in the Declaration of Lorna Zwerin Parson Are Not Without Dispute.

At no time did Plaintiff acknowledge that the complaint was resolved. Twelve months did not pass without discriminatory and retaliatory acts by Smith. Note the chronology of retaliatory events in Doc. 1 and the fact that Plaintiff did not work in the same location as Smith. Therefore Smith waited for the "first opportunity," a legal, legitimate reason to fortuitously materialize, and then used it to cover up his true, longstanding motivations to retaliate against Plaintiff. *Hamilton v. General Elec. Co.,*

556 F.3d 428, 436 (6th Cir. 2009). On December 17, 2012 (less than 4 months after Plaintiff's August 28, 2012 reinstatement) Smith reduced the number of judges she served from 15 to 6, reassigning about 60% of her job duties. This act adversely changed the terms and conditions of Plaintiff's employment. Plaintiff relayed this occurrence to Maddox who did nothing.

> According to Patricia Barnes, J.D., **bullies lack empathy and will agree to a joint solution only to lie in wait, like a crocodile eyeing a shore bird, until it is safe to strike again.**

This statement and many others that equate bullying behavior to "domestic violence," demonstrate the inability of these personality types to change with mere mediation. The Plaintiff was essentially a "sitting duck." With strict scrutiny, it is clear that Defendants' proffered reasons for Plaintiff's termination ("for cause") are pretextual. 17 days after the inspector's November 4, 2013 report detailing evidence of mold was received by Defendants, they covered it up by suspending Plaintiff on November 22, 2013, then terminating her. Coupled with the pattern of other retaliatory events alleged in Doc. 1, it is apparent that Smith's intent was to continue discriminatory and retaliatory acts after Plaintiff filed a grievance against him that included "bullying."

To discriminate against Plaintiff, Smith used discriminatory email tactics. For example, he emailed a plan to all Satellite Librarians with a proposed reduced library space on November 15, 2015. Plaintiff's plan was dated 11/1/2015, the same day that the inspection took place that revealed mold infiltration into her workspace. Smith's proposed plan moved Plaintiff to the opposite side of where her current office was located. (Exhibit E). In actuality, the new proposed plan targeted Plaintiff since after she

Case 1:15-cv-00185-TRM-CHS   Document 32   Filed 12/16/15   Page 6 of 28   PageID #: 359

was suspended; Smith sent an email to remaining librarians on November 27, 2013 stating, "all satellite librarians have approved the remodeling plans for their space relinquishments... I would advise not shifting your books...in anticipation of remodeling that may be months or years away from occurring. My stated budget goal...to keep everyone in their jobs doing meaningful work as long as possible". (See Exhibit F). From my knowledge of Smith's discriminatory maneuvers, he did not intend to implement the remodeling plans. The proposed reduced workspace was targeted towards Plaintiff. Why was the Chattanooga's Librarian Office the only one moved to the opposite side, away from where mold was detected? To give the illusion that his act was nondiscriminatory, he provided remodeling plans to all Satellite Librarians.

## VI.    No Sixth Circuit Process for Unlawful Personnel Actions Could Provide Plaintiff with Relief When Controlled by Wrongdoers.

Plaintiff filed a Request for Counseling using the EDR Plan on August 1, 2012 under Chapter II – Equal Employment Opportunity and Anti-discrimination Rights citing "race" and "retaliation" after being terminated by Smith on July 2, 2012. After Plaintiff proved that discrimination (disparate treatment) did occur, she was reinstated with back pay on August 28, 2012 but was afforded no rights and protections afterwards. There was never an official closure to the EDR procedure. One of the intents of both the EDR Plan and the Sixth Circuit Personnel Policies is to prohibit retaliation after a Federal Judiciary employee has filed a charge of discrimination or participated in any other protected activity. The EDR Plan as administered by Maddox is not what Congress intended as the sole forum for adjudicating complaints of workplace discrimination by employees of the Judiciary. The Judiciary's EDR tribunals are the only forum where

employees may seek redress for unlawful personnel actions. *Dotson*, 398 F.3d at 171-76. Maddox never advanced the EDP Plan through the appeal levels to prevent Smith's noncompliance. The EDR Plan specifically authorizes the drafting of an order designed to "prospectively insur[e] compliance with the Court's guarantee of equal employment opportunity. *Golinski*, 587 F.3d 956, 960. All Plaintiff received from Maddox was a "Last Chance Letter" similar to the one referred to in *Hamilton v. General Elec. Co.*, 556 F.3d 428, (6th Cir. 2009) that constitutes the very definition of pretext. Maddox states on August 9, 2012, "If I determine that a pattern of inappropriate communication or behavior develops, I will provide a single warning." Then Maddox goes on to say on November 15, 2015, "Bystanders like myself might read your missives to Mr. Smith as contrary and insubordinate..." (Exhibit G) Plaintiff is in a building that she is experiencing extreme respiratory problems in, akin to probably the same conditions a Judge in Florida died from. Maddox was the Clerk of Court in Florida when the Judge died and others became extremely ill from mold exposal.

Maddox serves as EDR Coordinator, Hearing Officer, and Chief Judge Designee for all processes. In Plaintiff's situation, Maddox did not enforce any deterrent for Smith's noncompliance. Also, Maddox failed to ensure that Plaintiff's allegations were appropriately investigated as required by the EDR Plan. Any attempt to obtain an unbiased review was thwarted.

If that was not bad enough, after Plaintiff was terminated for the second time on February 25, 2015, she discovered on August 25, 2014 that Maddox and Smith terminated her Long Term Disability (LTD) insurance policy with MetLife effective

November 3, 2013, the week the inspector confirmed mold in Plaintiff's workspace. (See Exhibit H).

## VII.  Federal District Court Does Have Jurisdiction to Hear This Claim and/or Direct It to the Appropriate Judicial Officer.

Judicial officers acting pursuant to the EDR Plan have the responsibility and authority to provide the rights, protections, and remedies to Judicial employees enjoyed by congressional employees, and do so in the name of the Judicial Conference. (*Golinski*, 587 F.3d 956, 958 (9th Cir. 2009). *Golinski* gives jurisdictional power to Federal District Courts to right personnel action wrongs per the EDR Plan. Plaintiff was not provided due process under the EDR Plan as administered by Maddox. Plaintiff was never given access to an unbiased level of appellate review available under the EDR Plan to halt Smith's discriminatory and retaliatory treatment of her after reinstatement. At no time did the EDR Coordinator, Maddox, ensure that Congress' intent for the EDR Plan aligned with the EEOC Plan to protect employees from discrimination and retaliation.

In closing, Plaintiff enjoyed no rights and protections guaranteed by the EDR Plan. Reinstatement with back pay on August 28, 2012, minus enforcement of EDR Plan retaliatory provisions with consequences for failure to comply, simply added fuel to the fire.

## CONCLUSION

It would be unconscionable for this Court to allow Maddox and Smith to walk away unscathed from intentional discrimination, disregard of the EDR Plan, an epic

cover-up of workplace mold, disregard for human life, and LTD insurance policy cancellation that nearly caused Plaintiff her life. Maddox and Smith took great effort to ensure that all of their wrongful acts would not be discovered before Plaintiff was wrongfully terminated. While a Judiciary employee, Plaintiff had no unbiased chance to be heard on the merits or discover just how far Maddox and Smith would go with their retaliation against her. Accordingly, for the reasons expressed above, Plaintiff respectfully requests that this Court deny Defendants' Supplemental Memorandum in Support of Motion to Dismiss to protect the integrity of the EDR Plan. (See Affidavit)

Respectfully submitted on the 14th day of December, 2015,

Philleatra Gaylor, Pro Se
740 Lakeview Ave NE
Atlanta, GA 30308
(770) 317-3143
pjoycegaylor@gmail.com, gaylorp@gmail.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 14th day of December, 2015, I mailed by U.S. Mail first class a copy of this opposition to the counsel of record..

/s/Philleatra Gaylor, Pro Se

Case 1:15-cv-00185-TRM-CHS   Document 32   Filed 12/16/15   Page 10 of 28   PageID #: 363



GSA Southeast Sunbelt Region

September 20, 2013

Dear Mr. Maddox:

The letter you provided is addressed to your agency and has time lined a response of
NLT 16 September 2013 which has since past. As I have explained this office was not
aware of any possible health concerns located at the Joel Solomon Building, 2nd Floor
Library, Room 245. Management has executed due diligence and has inspected the
area. We also sought out guidance from OSHA and the GSA's Health and Safety
branch. As with anything related to our building, it is our commitment to insure that the
health and safety of our tenants and vistors is not compromised in any way, form or
fashion. This instance is no different.

The space concerned has been inspected by both the O&M Contractor and our local
FOS which consisted of visual inspections of the space along with mechanical operation
technical specifications and have found no evidence of mold or mildew nor did we
experience any fowl odors that would indicate such. The air handler that supplies
conditioned air along with individual VAV's to that space have also been inspected with
no abnormal findings. Furthermore relative humidity readings in the space are currently
at 54% which does not promote mold or mildew growth. We have also reviewed our
past OSHA inspections to look for any indications that would prompt any concerns and
have found no disturbing trends. We welcome the tenant agency to perform air
sampling and/or mold testing and will provide access to spaces if such testing is
ordered. However, at this time is the position of the GSA that no further testing is
warranted. Please contact this office with any questions you may have.

Sincerely,

*Megan W. Lyness*

Megan W. Lyness
General Services Administration
Federal Property Manager
900 Georgia Avenue
Chattanooga, TN 37402
(423) 752-5289

U.S. General Services Administration
900 Georgia Avenue
Chattanooga, TN 37402
www.gsa.gov



Water stained ceiling tile behind Plaintiff's office chair



Mold outside Plaintiff's windows that seeps into office workplace
Look closely at windows



Mold and moisture condensation on Plaintiff's office window from the inside



**Resolution of Library Grievance**
Paul Calico    Clarence Maddox
Philleatra Gaylor, Owen Smith

06/08/2012 11:03 AM

Clarence,

I am writing to advise you that I have completed my extensive investigation of the issues relating to the Grievance and Amended Grievance filed by Philleatra Gaylor. My investigation included reviewing extensive documentation, speaking with Ms. Gaylor and Owen Smith (separately) multiple times, interviewing other library employees, researching the Court's Personnel Policies, and circulating drafts of the proposed terms on which the issues can be resolved.

I am pleased to report that, following that process, I can confirm the terms on which the parties have agreed to resolve the issues and move forward.

Set forth below are the four forms of relief requested in the Amended Grievance, followed by my summary of the terms on which the parties are willing to move forward with regard to each item.

1. Investigation of Owen's management style and mental health status

Owen indicated that he does not believe the request is appropriate for inclusion in a grievance; Philleatra indicated that she does not anticipate further problems at this time.

2. Purging the Memorandum of Counseling including the Addendum from all files

Philleatra wants to ensure that a complete package of the materials (including the Memorandum of Counseling, Response, Addendum, Grievance, and Amended Grievance) will be retained together. Section 1.8.2.3 of the Court's Personnel Policies states, in pertinent part, that the fact that an employee has used the grievance process may not be included in an employee's personnel file. Grievance materials must therefore be maintained somewhere other than in an employee's personnel file.

Accordingly, to comply both with the provisions of § 1.8.2.3 and with Philleatra's desire for a complete package of materials to be retained as a group, I have agreed to retain a complete set of all of the documents I have reviewed and discussed in the course of my investigation (including the Memorandum of Counseling, Response, Addendum, Grievance, and Amended Grievance and all attachments). I will keep those materials in a separate file in my office. I have also been asked to see if you would be willing to maintain a duplicate file in your office for future reference.

3. Transfer to a comparable position in the U.S. Courts' Atlanta location

Owen will not interfere if an opportunity surfaces for Philleatra to transfer to a position in Atlanta; that is acceptable to Philleatra.

4. Peace of mind (without bullying, unreasonable demands, and exaggerated accusations) to do the job Philleatra was hired to perform

Owen does not believe he bullied Philleatra or made unreasonable demands or exaggerated accusations; he says he has no intention of doing so in the future. Although Philleatra disagrees with some of the actions Owen took in the past, she indicates that he is not currently bullying her directly. She characterizes the current arrangement as "coexisting," and she is willing to proceed with caution in good faith, hoping that no further action is required. She will document any future incidents should they occur.

I have expressed my appreciation to Philleatra and Owen for their cooperation and professionalism throughout the course of this investigation, and I am pleased that we are able to resolve these issues, allowing both Philleatra and Owen to continue their work on behalf of the Court. If you have any questions regarding this matter, please let me know. I also look forward to hearing back with you regarding the issue of whether a duplicate file can be maintained in your office.

Paul Calico



**Paul B. Calico**
Chief Circuit Mediator
U.S. Sixth Circuit Court of Appeals
331 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, OH 45202-3988
**Telephone: 513-564-7330**
**Fax: 513-564-7349**
**Paul_Calico @ ca6.uscourts.gov**



P Joyce Gaylor <gaylorp@gmail.com>

## Fw: Re: Follow-Up to Your Termination Letter You Had the Chief Judge Sign
1 message

**From:** Clarence_Maddox@ca6.uscourts.gov <Clarence_Maddox@ca6.uscourts.gov>;
**To:** pjbgaylor@yahoo.com <pjbgaylor@yahoo.com>;
**Subject:** Re: Follow-Up to Your Termination Letter You Had the Chief Judge Sign
**Sent:** Wed, Feb 26, 2014 2:31:55 PM

Ms. Gaylor:

All documentation that followed the notice of proposed adverse action was sent to the chief judge within a few days of receipt of your request for review by the chief judge. Pursuant to the Sixth Circuit's policies transmitted to you on November 22, 12013, note the chief judge makes the final decision in connection with Appeals of Adverse Action - see below:

**1.10.6.2** If such a request is made, the Chief Judge or his/her designee may conduct an additional investigation, interview the parties or other persons, or hold a hearing upon notice to the parties. The Chief Judge or his/her designee will issue a final decision, based upon his/her findings.

Accordingly, no further appeal is contemplated.


Clarence Maddox, Circuit Executive
United States Court of Appeals for the Sixth Circuit
503 Potter Stewart United States Courthouse
Cincinnati, Ohio 45202
(513) 564-7200


From:    "pjbgaylor@yahoo.com"< pjbgaylor@yahoo.com>
To:      "Clarence_Maddox@ca6.uscourts.gov" < Clarence_Maddox@ca6.uscourts.gov>
Date:    02/26/2014 08:48 AM
Subject: Follow-Up to Your Termination Letter You Had the Chief Judge Sign


After reading the document I realized that you did not give her a copy of my Request for Review of the Final Decision because there were no rebuttals in her letter of any of my statements. You just wrote a letter and had her sign it.

Please send me the Administrative Judge appeals procedure.



JOEL SOLOMON FEDERAL BUILDING AND COURTHOUSE
CHATTANOOGA, TN
11.1.2013

CIRCUIT LIBRARY 628 USF
COMMON CORRIDOR 58 USF
CIRCUIT LIBRARY 5,618 USF

Case 1:15-CV-00185-PLR-CHS   Exhibit E

11/27/2013 03:51 PM -----

From:   Owen Smith/CA06/06/USCOURTS

To:     CA06ml_lib Satellite Librarians

Date:   11/27/2013 03:37 PM

Subject: Update on Circuit Librarian Meeting and Upcoming Judicial Council Assessment


Everyone,

I attended a circuit librarian meeting last week, and wanted to update you on that meeting, as well as ongoing preparations for the Judicial Council's upcoming assessment/report.

...The Judicial Council assessments must be completed by March 31, 2014, and these assessments will likely be in the form of a report on whether reductions/closures of libraries are needed or planned.

... Also, although all satellite librarians have approved the remodeling plans for their space relinquishments, I would advise not shifting your books in anticipation of relinquishing the space. Weeding collections always makes sense, but I would advise not shifting the collection in anticipation of remodeling that may be months or years away from occurring. I can speak to this from my personal experience of shifting the Cincinnati collection when we initially thought our plans would be approved quickly. This left the library with empty shelves that can alter and harm the patron's perception of the library's usefulness.

...My stated budget goal for the library remains the same as it has been since I became circuit librarian -- to keep everyone in their jobs doing meaningful work as long as possible, and to make reductions in book and rent expenditures before cutting salaries or eliminating jobs. As always, please let me know if you have questions and I will try my best to answer them.

Hoping you have a safe and enjoyable Thanksgiving, Owen

Owen G. Smith, Circuit Librarian
Library of the U.S. Court of Appeals for the Sixth Circuit
317 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202-3911
tel: 513.564.7324; fax: 513.564.7329

From:      Clarence Maddox/CA06/06/USCOURTS
To:        Philleatra Gaylor/CA06/06/USCOURTS@USCOURTS
Cc:        Owen Smith/CA06/06/USCOURTS@USCOURTS
Date:      11/15/2013 12:36 PM
Subject:   Re: Request for List of In-Presence Duties Required of Satellite Librarians in Libraries Designated as "Court Only" (Correction)

Dear Ms. Gaylor:

I sent the attached letter to you via email on September 27, 2013. I am resending it as a reminder to you about the appropriate procedures for lodging a grievance or complaint. Your intent in connection with the underlying transmittal is unclear, but it is not considered a grievance or complaint.

Please allow me to be direct with you. Bystanders like myself might read your missives to Mr. Smith as contrary and insubordinate. You report to Mr. Smith: he does not report to you. You may not demand that he provide you with communications between himself and others related to his work direction to you. He is free to offer same if that is his choice, but it remains a choice fully within his discretion. It is otherwise up to you, as a subordinate employee to follow his management directions. After all, you provide support in the circuit satellite library for which he is ultimately responsible.

Mr. Smith has conveyed to you, notwithstanding your request for an accommodation, that telecommuting is not an option for the satellite librarian position. It is not an option because satellite librarians are posted within libraries to service and maintain the court's collection at the location and provide service to visitors, whether they be from the court, or members of the bar or public. Servicing the court's collection at the location has been the principle reason for the satellite librarian posting, but serving visitors is viewed to be an integral component of the job. Both tasks require a satellite librarian's in-person attendance. To the extent you disagree, be mindful that your position has been heard and considered. Beyond that, it is a matter outside your scope of authority and discretion.

We genuinely regret that you are experiencing the level of discomfort you have described. However, we have allowed you time off and have taken what we believe to be timely, reasonable steps to examine your working conditions. Based on the reports received, we are satisfied conditions are safe. You have therefore been instructed to report to work at the courthouse and keep the library open to the public. Nothing about that direction is retaliatory - you have simply been asked to do the job you applied for and accepted, as it was and continues to be contemplated.

Now, respectfully, please focus on your work as directed and cease sending the emails. cm

Clarence Maddox, Circuit Executive
United States Court of Appeals for the Sixth Circuit
503 Potter Stewart United States Courthouse
Cincinnati, Ohio 45202
(513) 564-7200

8/27/2014

Mr. Clarence Maddox
Circuit Executive
U.S. Court of Appeals for the Sixth Circuit
503 Potter Stewart United States Courthouse
100 East Fifth Street
Cincinnati, OH 45202-3988

Dear Mr. Maddox:

It has come to my attention that on the date (11/22/2013) that I was given a proposal of adverse action, I no longer was enrolled in the federal government's long term disability plan for which I paid a bi-weekly premium of $25.00. At no time did I authorize the termination or cancellation of this policy. Additionally, I was not terminated at this time. The proposed termination date was supposed to be 12/3/2013 with an opportunity for appeal.

Since I am perplexed as to what occurred, please provide the following documents by 9/5/2014:

(1) Pay statements that include LTD deductions from 9/1/2013 to 12/31/2013;
(2) Paperwork that authorized the cancellation of my LTD policy prior to my termination date;
(3) Exact date of termination.

If there is other information to justify the termination of my policy without notification to me,   .
please provide that also.

Sincerely,

Philleatra Gaylor
740 Lakeview Ave NE
Atlanta, GA 30308
gaylorp@gmail.com
(770) 317-3143

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
503 POTTER STEWART UNITED STATES COURTHOUSE
100 EAST FIFTH STREET
CINCINNATI, OHIO 45202-3988

**CLARENCE MADDOX**
CIRCUIT EXECUTIVE

TELEPHONE: (513) 564-7200
FAX: (513) 564-7210
WEBSITE: www.ca6.uscourts.gov

September 10, 2014

Ms. Philleatra Gaylor
740 Lakeview Avenue, NE
Atlanta, GA 30308

Dear Ms. Gaylor:

I received your past letter dated August 28, 2014 on September 2, 2014. Please direct all questions related to your pay and benefits while you were employed by the court of appeals to the Human Resources Staff at the Administrative Office of the United States Courts. Following is the address for the relevant group:

Administrative Office of the U.S. Courts
Court Human Resources Division
Payroll Services Branch - Room 2-270
One Columbus Circle
N.E.Washington, DC 20544

Inasmuch as you are a former employee of the judiciary, we defer to the Administrative Office to handle your inquiries. Further inquiries to this office will receive no response.

Sincerely,

Circuit Executive

CM/lmb
cc: Owen Smith, Circuit Librarian
    Lorna Parsons, Human Resources Specialist

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

PHILLEATRA GAYLOR (Pro Se),

Plaintiff

v.

OWEN SMITH, Circuit Librarian,
U.S. Court of Appeals for the Sixth Circuit;
CLARENCE MADDOX, Circuit Executive,
U.S. Court of Appeals for the Sixth Circuit;
MEGAN LYNESS, Federal Property
Manager,
U.S. General Services Administration; and
CLIFFORD L. MOSLEY, Representative,)
Environmental Health Services,

CASE NO. 1:15-CV-00185
(Reeves/Steger)

Defendants

## AFFIDAVIT

Name of Complainant: Philleatra Gaylor

Date Affirmed: 12/14/2015

I, Philleatra Gaylor of 740 Lakeview Ave, Atlanta, GA affirm:

1. I was employed as a Satellite Librarian for the United States Court of Appeals for
   the Sixth Circuit. The headquarters is in Cincinnati, OH but my work location was
   Chattanooga, TN.

2. I was hired by the former Circuit Librarian Kathy Welker and reported to work on
   August 16, 2010.

3. I relocated from Atlanta, GA to Chattanooga, TN with my son, who is on the Autism Spectrum, who required assistance getting to school each morning on school days.

4. Owen Smith replaced Kathy Welker as Circuit Librarian on approximately October 17, 2010.

5. The working relationship deteriorated after Owen Smith visited Plaintiff in Chattanooga, TN on August 17, 2011.

6. Plaintiff was the sole African-American Satellite Librarian for the United States Court of Appeals for the Sixth Circuit Library.

7. Circuit Librarian Owen Smith would send out emails to all Satellite Librarians but then only treat Plaintiff in a disparate manner.

8. On March 14, 2012, Plaintiff followed the United States Court of Appeals for the Sixth Circuit grievance procedure which required Plaintiff to send a grievance letter to the Unit Head who happened to be Circuit Librarian Owen Smith (hereafter "Smith"). Plaintiff alleged harassment, discrimination, and bullying.

9. The grievance letter was reviewed by Circuit Executive Clarence Maddox (hereafter "Maddox") who arranged a mediation.

10. The mediation was completed on June 8, 2012 with Smith stating he had no intention of bullying Plaintiff in the future.

11. On approximately July 2, 2012 (less than 25 days after agreeing to the mediation terms), Smith drove to Chattanooga, TN and terminated Plaintiff's employment without notice.

12. Plaintiff realized that Smith had never signed the mediation agreement.

13. On August 1, 2012, Plaintiff filed an Employment Dispute Resolution complaint with Maddox alleging and proving acts of discrimination against her by Smith.

14. Plaintiff was reinstated on August 28, 2012.

15. On December 17, 2012, (less than 4 months after Plaintiff's reinstatement), Smith reassigned 9 of Plaintiff's 15 judges. Plaintiff's job duties were reduced by about 60% since she now served only 6 judges.

16. Plaintiff informed Maddox about the reassignment of judges but he did nothing.

17. Plaintiff's reduced judge count became effective January 2, 2013.

18. After experiencing the effect of the lessened job duties, on January 29, 2013, Plaintiff asked Smith why he had reassigned the judges because to her knowledge no judge had complained, he did not reply.

19. Plaintiff continued work with the lessened responsibilities.

20. In July, 2013, Chattanooga experienced an abnormally heavy rainy season.

21. Several news media articles confirmed that there were rats, flood, and leaks in the Chattanooga' federal courthouse.

22. Plaintiff had worked in the Joel W. Solomon Federal Building in Chattanooga, TN without complaint about any hazardous or environmental problems for over 3 years.

23. Plaintiff started experiencing nasal congestion making breathing difficult, laryngitis (hoarseness) after being in the building approximately 2 hours, xanthelasma that disfigured Plaintiff's eyelids, severe headaches, fatigue, and eventually panic attacks.

24. Plaintiff went to her doctor of over 10 years who noticed Plaintiff's worsening respiratory condition.

25. A pro se lawyer on the same floor that Plaintiff worked had respiratory problems and communicated that she had experienced similar symptoms that led to internal bleeding. She had asked that all air from the HVAC system be cut off in her office. To survive, she purchased fans, heaters, and air filtering systems.

26. Plaintiff's doctor wrote a note "To Whomever It Concerned" and recommended that Plaintiff telework from home. Plaintiff requested ADA accommodations to work from home on August 29, 2013. Smith never responded.

27. In the interim, Plaintiff saw an ENT doctor in Chattanooga, TN who gave her steroid shots and put her on an assortment of antihistamines. Plaintiff felt drugged and disoriented most days making it dangerous to drive to work.

28. Plaintiff's condition became so severe that she contacted OSHA on September 9, 2013. She informed Smith the same day that she had contacted OSHA.

29. Plaintiff was so disoriented the next day, September, 10, 2013, she accidently cut the tip of her left thumb off using the paper cutter.

30. Plaintiff was granted 5 days of paid administrative leave for the workplace to be inspected.

43. Plaintiff has not been able to locate comparable employment.

44. Plaintiff concludes that she was discriminated and retaliated against because of her race and disability.

45. Currently, the Chattanooga Library is remotely managed from Cincinnati, OH so telework could have been an accommodation.

46. Plaintiff was never afforded the rights, protections, or remedies available to judicial employees per the EDR Plan.

47. Since Maddox acted as Hearing Officer, EDR Coordinator, and Chief Judge Designee, Plaintiff had no avenue to an unbiased hearing as Congress intended.

---

## DECLARATION

I, the undersigned, declare under penalty of perjury that the statements made in the above affidavit are true and correct to the best of my knowledge, information, and belief.

_____        12/14/15
Signature                               Date


STATE OF GEORGIA
COUNTY OF FULTON

I, the undersigned Notary Public, do hereby affirm that Philleatra Gaylor personally appeared before me on the 14th day of December 2015, and signed the above Affidavit as her free and voluntary act and deed.

Notary Public

INDIA LYNN
NOTARY
EXPIRES
GEORGIA
May 15, 2018
PUBLIC
COBB COUNTY



**UNITED STATES POSTAL SERVICE.**

Retail

# P

## US POSTAGE PAID
## $5.75

Origin: 30308
Destination: 37402
0 Lb 11.30 Oz
Dec 14, 15

1006

1204600065-28



## PRIORITY MAIL ®2-Day

Expected Delivery Day: 12/17/2015    C003

### USPS TRACKING NUMBER

9505 5136 6637 5348 1153 95

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.





PS00001000014

EP14F July 2013
OD: 12.5 x 9.5



PRIORITY MAIL
POSTAGE REQUIRED



★ MAIL ★

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
740 Lakeview Ave NE
Atlanta, GA 30308

TO: Clerks Office
U.S. Courthouse
900 Georgia Ave
Ste 309
Chattanooga, TN 37402











IT US AT USPS.COM®
ER FREE SUPPLIES ONLINE