UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PHILLEATRA GAYLOR (Pro Se),

Plaintiff

v.

OWEN SMITH, Circuit Librarian,
U.S. Court of Appeals for the Sixth Circuit;
CLARENCE MADDOX, Circuit Executive,
U.S. Court of Appeals for the Sixth Circuit;
MEGAN LYNESS, Federal Property
Manager,
U.S. General Services Administration; and
CLIFFORD L. MOSLEY, Representative,)
Environmental Health Services,

Defendants

CASE NO. 1:15-CV-00185
(Reeves/Steger)

## AFFIDAVIT REFERENCING EXHIBIT F
## FROM CLARENCE MADDOX

The Plaintiff, proceeding pro se, hereby submits this affidavit in reference to

Exhibit F from Circuit Executive Clarence Maddox (hereafter "Maddox"). From my

dealings with Maddox, his main ideology is that supervisors can do no wrong.

Subordinates should follow the directives of supervisors even if they die doing so. Never

ever question a supervisor even if s/he is torturing a subordinate in front of you.

Supervisors are always right no matter what they do to you or the method employed.

Maddox would stand behind the actions of a supervisor no matter how abusive he or

she is. Maddox's personality has been described as cold and calculating as it relates to subordinates. (See Exhibit A-1). He never investigates anything; if a supervisor said it happened, it did. Also note that Maddox only tendered an exhibit. The bulk of the writings I have received from Maddox could not be sworn to under penalty of perjury.

I.

Maddox does not know what the word insubordinate means. His take on it is if you don't do what I say even if it is against OSHA safety standards, you are being insubordinate. There is no list of insubordinate activities related to Plaintiff's employment that Maddox can produce. Maddox can only provide a list of memos and expect the reader to focus in on what he thinks is "insubordinate" and pass over any far-fetched allegations made by both he and Smith.

II.

Circuit Librarian Owen Smith (hereafter "Smith") never counseled Plaintiff unless a memo of vitriolic and distorted criticism constitutes counseling. At no time did Smith provide a list of what he expected. It was always one criticism after another even for trivial matters and those of no significance. Even when asked during the hearing on December 9, 2013 what he expected, Smith had no idea and uttered, "just not that." All I could ascertain is that he wanted Plaintiff terminated and he had Maddox willing to do so without investigation or fairness.

At no time did Plaintiff balk at Smith. After Plaintiff's first evaluation on 2/18/2011 (See Exhibit B-1), before Smith visited the Plaintiff and discovered she was African-

American and well-liked by the judges and their staffs, Smith's whole personality changed and she became a target for criticism, isolation, jealousy, and bitter email attacks. Smith's treatment of Plaintiff when she was undergoing radiation was atrocious and vicious. It became so bad that Plaintiff's oncologist had to write Smith a doctor's note telling him why Plaintiff should not be on a ladder after she told Dr. Rice that Smith was trying to force her to take and measure pictures displayed over 72 feet high in a courtroom. (See Exhibit C-1). On March 4, 2012, Plaintiff followed the grievance process and submitted an Amended Grievance Letter to Maddox. A mediation settlement ensued that Smith ignored and then in less than 25 days terminated Plaintiff.

III.

Plaintiff was reinstated on August 28, 2012 after sending Maddox a document (See Exhibit D-1) that she knew Smith could not answer without being found blameworthy in the discriminatory (disparate) treatment of Plaintiff.

Maddox further claims that he was asked to monitor the relationship between Smith and the Plaintiff. Maddox did nothing but continue to support Smith's mistreatment of Plaintiff and did not want to hear anything to the contrary. Maddox indifferently alleges, "One of Ms. Gaylor's chief complaints during the period was that Mr. Smith was reducing the scope of her responsibilities through the assignment of judges' support to other satellite libraries, notwithstanding the fact that reorganization of library resources was being encouraged at the national level. Telework was also being encouraged at the national level but Maddox did not support that. Maddox addresses the reduction of Plaintiff's judge count so casually like no big deal. The big deal was that Satellite Libraries serving 10 or fewer Judges were being

scrutinized for closure. The right thing to do would have been to discuss Reduction in

Force (RIF) with Plaintiff along with options and benefits. A discussion would have been

humane instead of the character assassination both Maddox and Smith engaged in.

IV.

Next Maddox states that he provided Plaintiff with five days of administrative

leave so that her workplace could be inspected. What he fails to say is that he ordered

Plaintiff back to the workspace prior to the inspection. Then Maddox goes on to claim

GSA and FOHS reports were benign for mold. Megan Lyness' GSA report has been

discredited from pictures Plaintiff took of visible mold accumulations in her workplace.

V.

The Plaintiff was not difficult after she returned. The Plaintiff couldn't breathe,

had severe respiratory problems, excruciating headaches, and barely could talk most

days after June 2013. Maddox keeps repeating "insubordinate conduct" without

examples. Maddox must consider it insubordinate if you contact OSHA when your

supervisor fails to act, question him about hazards that can lead to death, or know that

ADA accommodations exist. No OSHA warning was posted to Plaintiff's knowledge

about hazardous conditions.

**DECLARATION**

I, the undersigned, declare under penalty of perjury that the statements made in the
above affidavit are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| _____ | 12/16/2015 |
| Signature | Date |

STATE OF GEORGIA
COUNTY OF FULTON

I, the undersigned Notary Public, do hereby affirm that Philleatra Gaylor personally appeared before me on the 14th day of December 2015, and signed the above Affidavit as her free and voluntary act and deed.

_____
                              Notary Public

Notary Public, DeKalb County, Georgia
My Commission Expires Feb. 16, 2016

## *Avvo*

# I am an employee of the federal judiciary and would like to know what my rights are in regards to filing lawsuit.

♀ Cincinnati, OH · on Oct 22, 2012

•
Filed under:   Employee rights   Protections against employer retaliation

I have experienced discrimination (based on my sex) and retaliation for filing a complaint against management. The retaliation includes demotion, denial of time off and disparity treatment from other employees.

In their answer, they are asking for my complaint to be dismissed and indicate that I have no other rights beyond the internal process. Is this correct? As a judiciary employee do I still have a right to due process?

- Read Less

# SIXTH CIRCUIT LIBRARY
# LIBRARIAN PERFORMANCE APPRAISAL

Librarian Name __Philleatra Gaylor_____  Position ____Satellite Librarian_____

Library _____Chattanooga_____  WGI Due _____

Performance Period ___8/16/2010_____to _2/16/2011___  ____x___Probationary _____Annual

Date given to librarian _____

Date returned to supervisor ___2/15/2011_"_____

This form has been completed and a conference held for review on <u>Feb 18, 2011</u>.

Librarian Signature_____

Supervisor Signature_____

_____  Overall Rating Attached _____  2-18-11

Circuit Librarian Signature  Date

**INSTRUCTIONS FOR COMPLETING THE PERFORMANCE APPRAISAL:**

The purpose of the Performance Appraisal is to identify and critique a librarian's performance during the performance period. For librarians new in their position, the Performance Appraisal is completed by the end of the initial probationary period. Subsequent Performance Appraisals are to be completed at least annually. Properly used, the appraisal is a means of providing appropriate feedback to librarians and is also a developmental tool. It should be a codification of dialogues which are ongoing between librarians and supervisors. The performance appraisal form merely formalizes and reduces to writing that process which is continually occurring between librarians and supervisors.

Librarians and supervisors <u>must</u> complete all parts of the form. Librarians needing clarification of the process should consult with their supervisors before filling out the form. Librarians complete their part of the form first. Supervisors should accept forms from librarians only after they have been completed entirely.

The Circuit Librarian is the rating officer for all librarians. All ratings forms that are received by the payroll certifying officer are to be forwarded to the Circuit Librarian for completion. All librarian ratings may result from consultation with the Deputy Circuit Librarian and with librarians in charge of functional areas pertinent to the position description of the librarian being rated.

Ratings are based upon written appraisals and consultations with supervisors. Other court personnel who may be consulted are described below.

A written appraisal will be given annually to each librarian by his or her immediate supervisor(s) who has first-hand knowledge of the librarian's work performance. Supervisors will also provide the librarian the opportunity to discuss the appraisal and any goals set in the appraisal. This appraisal and opportunity for discussion will be given to the librarian at up to forty-five (45) days but not less than thirty (30) days prior to the anniversary date of employment, last promotion or within grade increase.

### Satellite Librarians

Ratings of librarians in charge of Satellite Libraries are based upon consultation between the Circuit Librarian, the Deputy Circuit Librarian and the local library committee, local library judge(s), librarians in charge of pertinent circuit-wide functional areas, and/or local court personnel whose duties include liaison for their court with the library.

### Satellite Library Librarians

Ratings of satellite library librarians (other than the Satellite Librarian) are based upon consultation between the Circuit Librarian, the Deputy Circuit Librarian, and the Satellite Librarian and, if applicable, his or her immediate supervisor(s). Immediate supervisors will submit to the Circuit Librarian written appraisals for librarians whom they supervise. Input may also be solicited by the Circuit Librarian from the local library committee, the local library judge, librarians in charge of pertinent functional areas, and/or from local court personnel whose duties include liaison for their court with the library.

### Cincinnati Librarians

Ratings of Cincinnati librarians are made by the Circuit Librarian in consultation with the Deputy Circuit Librarian and, if applicable, with his or her immediate supervisor(s). Immediate supervisors will submit to the Circuit Librarian written appraisals for librarians whom they supervise. The Circuit Librarian may also solicit input from the Circuit Library Committee and/or from the Circuit Executive.

A copy of the Librarian Performance Appraisal form will be given to the librarian being rated. The librarian should return the completed appraisal form to his or her supervisor within five (5) working days of receipt. The supervisor will have five (5) working days to complete their portion of the form. After the form is completed by the supervisor, it should be returned to the librarian and a conference scheduled for discussion of the appraisal no sooner than 24 hours after receipt of the appraisal by the librarian.

The conference comments section should be completed by the supervisor during or immediately following the conference. It should be used to reflect clarification and resolution of issues raised by the appraisal and discussed during the conference. It may also contain comments about the conference itself. Librarians should read the conference comments section prior to signing the appraisal form. A librarian's signature does not indicate agreement with the supervisor's appraisal as written in this document. The signature attests that the librarian has participated in the performance appraisal process and has seen the completed document. Rebuttal statements should contain statements indicating the parts of the appraisal with which the librarian disagrees. Completed performance appraisal forms will become part of each librarian's personnel record.

The Circuit Librarian will review the written appraisal in determining the "overall rating." If the rating is either (1) lower than the level recommended in writing by the supervisor(s) or (2) less than "meets standard", the Circuit Librarian will advise the librarian fifteen (15) working days prior to the anniversary date of employment, last promotion or within grade increase. In such a case, the Circuit Librarian will also provide the librarian with an opportunity to discuss this decision with him or her prior to the submission of the rating to the AO for processing.

Librarian Recognition

It is the policy of the Sixth Circuit Libraries to recognize outstanding librarian performance and achievement through a program which is administered equitably and on the basis of merit.

The Quality Step Increase Program recognizes outstanding performance of a librarian's continuing job duties by a permanent salary increase.

All librarians who have not reached the top step of their grade are eligible for quality step increases. QSI's are to recognize, on a continuing basis, librarians who display continuing high-quality performance. The librarian must have a minimum of twelve months of continuous service in the Federal judiciary and a minimum of twelve continuous months in the same grade immediately before the recommendation for the QSI.

QSI's may be considered, subject to funding, at the time of a librarian's formal performance evaluation. Recommendations for QSI's must include:

-- The name of the librarian;

-- The librarian's present position, title, grade, and length of time in position;

-- The period of service on which the QSI is based, and the date and description of the last QSI received by the librarian, if any;

-- A brief description of the librarian's duties, job functions, and major aspects of job performance;

-- A narrative statement with specific examples showing the manner in which the librarian's performance substantially exceeds normal job requirements in identified aspects of performance, and a statement by the supervising librarian that this high level of performance is characteristic of the librarian and is expected to continue.

Each QSI must be approved by the Circuit Librarian, regardless of the supervisory level which initiated the recommendation. QSI's must also be approved by the chief judge or his or her designee(s).

All approved QSI recommendations are reviewed by the Administrative Office's Personnel Division, for technical compliance with the requirements of the Employee Recognition Program. If the QSI complies with the requirements of this program, the Personnel Division will process the personnel action.

QSI nominations contain privileged information which should be made available only to those involved in making the decision or in processing the personnel action. Librarian morale may be adversely affected if information is disseminated prematurely. Therefore, the Circuit Librarian and supervising librarians normally should not discuss recommendations with librarians until the QSI is approved and subsequently processed.

## 1. **Cataloging and Classification**

Take into account the technical services librarian's ability to catalog and classify the Sixth Circuit library collections, or the satellite librarian's ability to accession, arrange and label materials in the library to facilitate easy access to the collection. Consider the establishment, maintenance and use of the serials record, the shelflist, the stack signage, the union catalog, and the public catalog. Also evaluate the adherence to the cataloging and classification policies and procedures adopted by the Sixth Circuit Libraries.

**Standard**

Catalogs and classifies, or assists in the cataloging and classification of, the collections in the Sixth Circuit libraries, following Anglo-American Cataloging Rules, Library of Congress subject headings and Library of Congress classification schedules. Develops and implements a serials record which provides all necessary and essential information to the library staff pertaining to receipt and location of materials received in the library. Assures that all

catalogs are maintained and card filing is kept current. Designs practical and attractive stack signage. Utilizes sufficient spine labeling to improve ready access to the collection and prevent loss of materials.

LIBRARIAN'S COMMENTS:

SirsiDynix Symphony 3.2 Workflows is the system used for cataloging, classification, and serials control. Since cataloging and classification take place at the headquarters library, serials control which involves creating serial control records, check-in, and routing takes place at the satellite library level. To facilitate the learning of Workflows, I maintain a Microsoft Word document that is frequently updated with screen captures as new functions are learned. Although I was provided three modules of vendor training: Serials: Control Records, Check-in and Claiming, and Configuration & Reports, the Sixth Circuit Library's implementation of Sirsi is customized to meet the needs of the U.S. Courts Library system, so more specific training is acquired from co-workers as needed. Thus far, my accomplishments include: (1) ability to display consignee records and determine how many copies are received of each title; (2) designate library location for a received item; (3) receive orders; (4) look up status of orders requested; (5) determine what annual orders have been placed for a title; and (6) create serials control records. Repetition of these tasks has increased my competency.

One item that warranted immediate attention was stack signage. The existing signage was extremely difficult to read and use to retrieve books. Library of Congress call number ranges were determined for each row, then signs were printed. Below are examples of the new signage designed:

 **KF 120**
Federal Supplement (F. Supp.)
(v. 751 - 930 )

 **KF 1384 - KF 1524**
Corporations, Securities Regulation,
Bankruptcy, West's Bankruptcy Reporter

 **KF 8970 - KF 9750**
Jury Practice, Remedies,
Criminal Rules, Criminal Law, RICO,
Jury Instructions, Sentencing

For book spines, the Dymo Labelwriter is used to generate call number labels. To ensure that the label is accurate, I attach a post-it note or screenshot of the catalog record to the book before giving it to the Library Technician to process. Affixing notices on books no longer supplemented is now underway.

Meets Standard __**X**__Does Not Meet Standard___


SUPERVISOR`S COMMENTS:

The Sirsi training documentation that you've created is a great idea, and please consider sharing it with other librarians if they might benefit. Stack signage is a major issue in all the libraries, and I'm very happy that you've tackled this project.

Meets Standard___X__Does Not Meet Standard___


## 2. **Communications**

Take into account the librarian's ability to communicate, both verbally and in writing, to patrons, to employees from other court units, and to the Circuit Librarian. Consider the kind of written communications, including intra-court memoranda and extra-court correspondence. Review the frequency of reports and the characteristics of user guides.

**Standard**

Communicates clearly and concisely in verbal and written communications to patrons, to other court unit employees, and to the Circuit Librarian. Written memoranda are used most often to communicate within the court, especially with the Circuit Librarian. These memoranda are always prepared on a word processor, and generated by a letter-quality printer, using correct grammar, spelling, and syntax. Correspondence mailed outside the court are prepared in like manner on library letterhead stationary. Written reports are prepared annually and circulated throughout the Circuit. Newsletters are published and distributed at regular intervals. User guides are readily available in the library, are periodically reviewed and are kept current. Telephone and telefacsimile communications are used only when time constraints require prompt action. Time is prearranged for lengthy in person and telephone conferences. Courtesy and consideration are extended when dealing with anyone in person or on the telephone.

LIBRARIAN'S COMMENTS:

Customer service is an integral part of a librarian's job. To be effective, both oral and written communication skills must be perfected. The first encounter generally involves a reference interview. Due to technological advances, requests for information tend to be received via email, phone, or voice mail. Few in-person dialogues occur.

As such, I feel I have been extremely successful in building a loyal customer following. Few days pass that I do not get challenging research questions. For example, one request provided an opportunity to chart a hierarchy of a Financial Accounting Standards Board (FASB) Codification paragraph that enabled visualization of how all of the cited sections correlated. Plus, I have scheduled in-person interviews with many of the law clerks to learn how they perceived library offerings and their search habits.

In the area of user guides, I prepared separate introductory guides for the public and judiciary. They readily advertize resources and services provided by the Sixth Circuit Library. I have also been participating in the webpage review group that is collaborating to enhance the site's usability.

Additional communication skills are employed as a contributor to the library's newsletter *Librar-E-Briefs*. I compile the section entitled *Information Discovery*. Then there is my contribution to the *Around the Circuit* publication electronically delivered daily to judges and law clerks. My current assigned sources include the New York Times and Tennessee news of interest to the federal courts in the Sixth Circuit. Also, an "Imagine Yourself on a Poster" READ invitation campaign was initiated to booster support for the program and locate more participants.

Meets Standard___**X**___Does Not Meet Standard___

SUPERVISOR'S COMMENTS:

The recognition of the importance of electronic and telephone communication is vital. User guides, Librar-E-Briefs, Around the Circuit, and READ are all great resource for marketing the library and library services. This marketing will be the key to our library's vitality, and I appreciate your efforts in making this marketing successful.

Meets Standard___X___Does Not Meet Standard___

3. **Management/Planning**

Take into account the librarian's ability to follow the policies and procedures of the Sixth Circuit Library Manual, as well as to write specific policies and procedures for the particular library. Consider the librarian's organizational skills, attention to detail, and accuracy in those areas which involve statistics, budget, and lawbook inventory. Consider

such traits as adaptability, creativity and inventiveness, and flexibility when evaluating the daily operations and planning for the library.

**Standard**

Develops, implements, and updates the procedures and policies which determine the day-to-day services which are provided by the library. Inventories the library and chambers collections. Reconciles inventory with Property Accountability Report. Ensures that accurate Reference, Circulation, and **Interlibrary Loan statistics** are kept. Orders materials for the library collection based upon the needs of the library users and within the time frame established by the Circuit Librarian. Adheres to the budget limits and deadlines set by the Circuit Librarian. Orders materials for the judges' chambers when requested. Determines the amount of binding necessary for the fiscal year and communicates that information to the Deputy Circuit Librarian when requested. Determines the future growth needs of the library and judges' chambers, and plans shifts, weeding of materials, use of excess lists, and cancellations accordingly. Works with the Circuit Librarian in planning any expansion of library space.

LIBRARIAN'S COMMENTS:

Day-to-day services that have received the most attention have been chamber collection inventory reconciliation and review; and acquisition fulfillments'as requested. One project involved working with two law clerks in Knoxville to get approval for cancelling duplicative titles and those that required an excessive amount of updating. Another project entailed the review of a bankruptcy judge's collection to ensure that it reflected her needs. Most of the collection in her office and shared library involved inventory control transfers from another consignee.

Requests for new materials have been minimal but those received were timely submitted to the Circuit Librarian for approval. Having access to interlibrary loans from U.S. Courts Library collections, other government libraries, and OCLC limits the need to place orders for titles that cannot be justified. Interlibrary loan statistics are maintained as necessary.

Although this library has let cancelled items remain on shelves due to the desires of some judges, a database in Microsoft Access is under development to keep abreast of what has been cancelled, the date cancelled, and where they are stored. Later, recommendations will be made to have the books excessed and weeded from the collections. No serials are maintained in any location that require binding.

Meets Standard__**X**__ Does Not Meet Standard___

SUPERVISOR'S COMMENTS:

ILL is a powerful too, and I'm glad to see that you are using this to wisely limit our expenses. Also, bindery expenses will become a bigger issue for us as we face increased financial pressure. I'm glad to see that you are already addressing this issue.

Meets Standard  X  Does Not Meet Standard___

## 4. **Reference/CALR**

Take into account the librarian's ability to conduct reference interviews in which the request is clarified, a time frame for responding is negotiated, and the accuracy and thoroughness is assured. Consider the librarian's ability to interact with library users either in person or on the telephone. Consider the willingness to cooperate and assist the other person with any problems they may have in doing their own research, using either book sources or computer-assisted legal research. Also evaluate any programs or publications the librarian has developed for training library patrons.

**Standard**

Provides direction and answers to questions posed by library users, using legal and non-legal resources. Conducts reference interviews which result in responses tailored to the needs of the library patrons. Accesses computer-assisted legal research, the library collection, other libraries in the community and circuit, and interlibrary loan. Negotiates the time within which a response is needed and responds within the agreed time. Acts as liaison between the judges' staff and the LEXIS and WESTLAW representatives. Arranges the necessary training for LEXIS and WESTLAW and maintains the listing of authorized users. Assists judges' staff with search queries on LEXIS and WESTLAW. Consults with other librarians and customer service departments of CALR vendors after exhausting all local resources. Scans major metropolitan newspapers and news magazines, legal journals and newspapers, library literature, as well as current case law, for current awareness purposes.

LIBRARIAN'S COMMENTS:

Providing reference services with quick turnaround remains a priority. My tendency is to meet or exceed expectations when posed a question by library users. I exhibit a drive to make sure that the information needs of the judiciary are fulfilled. Sample comments that I have received after filling a request include:

(1) "You are my hero. Thank you so much" (located an article for a judge who only remembered what the article was about and the circuit she thought published it);
(2) "These resources are awesome--thanks so much!" (compiled a short bibliography of sources to keep a law clerk abreast of Sixth Circuit case summaries);
(3) "Philleatra, this looks great. Thank you so much!" (fulfilled a request from another circuit library for various pages from a superseded treatise);
(4) "Thanks so much for the Westlaw tip!...Anytime you want to pass tips like these along, I will be ready for them!" (emailed information about Westlaw's IDEN database).

It appears that whatever the request has been, I have been able to satisfy the requestor by incorporating extensive experience obtained from performing reference work in other law library settings, plus tapping into resources located through library networks and listservs. Connecting library users to the information they need is critical in my opinion. Ensuring accuracy and timeliness of information delivered is also important.

A lot of my time is spent reading to keep current about technologies being used by other libraries, websites that have been deployed, best practices for obtaining information, "how to tips" for various software applications, etc. As such, I recommended the purchase of SnagIt screen capture software for the Sixth Circuit Library. I also keep track of open source tools and have purchased a HDMI cable for my netbook that allows me to watch free tutorials on Youtube.com.

Expanding CALR awareness is another focus, especially for underutilized resources. I have increased efforts to get more users to learn and become comfortable with LexisNexis. This has been done by arranging training in Chattanooga and Knoxville. Recently, Westlaw training was provided for the U.S. Probation Office in Greeneville, TN. Other outreach has been through attendance at district court functions (i.e., Christmas Luncheon, annual IT workshop for judges and law clerks, various parties).

Meets Standard__**X**__Does Not Meet Standard____

SUPERVISOR'S COMMENTS:

Keeping up with newer technologies is very important. Your monitoring these resources is very valuable. Communication with the court staff outside Chattanooga is necessary for a good working relationship. Your proactive response to this is very good.

Meets Standard   X   Does Not Meet Standard____

### 5. Supervision

Take into account the supervising librarian's ability to manage subordinate library staff. Consider the leadership qualities of the supervising librarian, the communication skills used, the organizational structure and climate adopted by the supervising librarian or recommended by the Circuit Librarian, and the degree of familiarity and adherence to the policies and procedures of the Sixth Circuit Libraries.

**Standard**

Writes coherent and explicit job descriptions and vacancy announcements. Follows employee selection procedures and criteria recommended by the Circuit Librarian. Provides new employees with a comprehensive orientation to the federal courts, the federal court library system, the operations of the specific library or department, and the requirements of the position. Offers sufficient training to enable staff to perform assigned tasks within expected time frames and within specified quality parameters. Follows training with close observance of job performance of staff, correcting errors, clarifying expectations and reviewing procedures. Makes an effort to keep the lines of communication with subordinate staff always open. Develops library procedures and coordinates work schedules to fully meet the goals and mission of the Sixth Circuit Libraries. Creates and maintains an atmosphere in the library that encourages staff participation, input and creativity. Follows the performance evaluation procedure adopted by the Sixth Circuit Libraries and recommends appropriate personnel actions for subordinate staff.

LIBRARIAN'S COMMENTS:

Having supervised both professional and paraprofessional staffs, I have made many lasting relationships and acquired a wealth of experience. Currently, I supervise one part-time Library Technician who works 10 hours per week. Unfortunately, most of her job consists of collection maintenance with negligible reference work in holdings verification. Morale appears high and no problems have been noted. Her ideas, input, participation, and creativity are encouraged. Policies and procedures are adhered to as they are promulgated. Orientation and training are provided based on change or need.

Meets Standard__X__Does Not Meet Standard___

SUPERVISOR'S COMMENTS:

Your professionalism in your supervision is very helpful. I am impressed that you include morale in your comments. This is crucial to having a good working relationship.

Meets Standard  X  Does Not Meet Standard___

PLANS FOR IMPROVEMENT OR INCREASE IN EXPERTISE: This section is completed by the librarian and the supervisor at the time of their performance appraisal conference. A specific plan for improvement for areas marked "Does Not Meet Standard" must be provided in this section. For areas marked "Meets Standard," this section should contain plans for growth.

**COMMENTS**: This section may be used to comment on the previous year's librarian/supervisor working relationship, to state personal and/or library goals, to discuss the librarian's professional development, to comment on the performance appraisal process or to simply address a message to the librarian or supervisor.

LIBRARIAN:

Library goals that I intend to accomplish include:

1. Fully implement the social media monitoring service for judges in the Eastern District of Tennessee;

2.   Work with Knoxville judiciary staff to weed their collection of severely outdated treatises;

3.   Continue developing Microsoft Access databases for knowledge management and collection maintenance;

4.   Develop a product that functions as an awareness service (i.e,, non-legal websites useful to the judiciary);

5.   Encourage the use of web-based CALR training and vendor websites for keeping current;

6.   Self teach or schedule WordPress and Captivate training; examine CamStudio (an open source screencast program);

7.   Work on a strategic collection development plan for the Frank W. Wilson Library.

Personal goals slated for achievement include:

1.   Attend continuing education classes at Chattanooga State Community College or an online program that expands my graphics and website development skills;

2.   Locate publisher for library related article that I wrote in 2010;

3.   Identify volunteer opportunities that will enrich my life at work and home (Tennessee's nickname is the "Volunteer State").


SUPERVISOR:

Philleatra, these are wonderful goals, and I see your strong desire for growth and learning. These are commendable qualities to have in an employee and I am thrilled you posses them. Your selection of training opportunities in a variety of media is a very productive way to look for learning. I will be checking in with you on the goals as the months progress and after I am able to visit you in Chattanooga. I am thrilled with your work so far.  I look forward to continuing to work with you .


**CONFERENCE COMMENTS:**

TO WHOM IT MAY CONCERN

2/20/12   **MD's Weekly Treatment Visit**

**MD:** DR DAVID RICE

**Patient Name:** Philkentra Gaylor (5-10-54)

**Treatment #:** _____

**Weight:** _____          **Pain** _____

**Medication Changes:** _____

_____

**Miscellaneous:** Pt is receiving radiation
therapy. Pt needs to refrain from using a
stepping stool or ladders at this time
due to her unsteadiness at this time. Maybe?

David W. Rice
Radiation Oncologist

Case 1:15-CV-00185-PLR-CHS    Exhibit D-1



**P Joyce Gaylor <gaylorp@gmail.com>**

## e-Discovery needs to backup EDR Claim including retaliation without due process per Request for Counseling
1 message

**P JOYCE GAYLOR** <pgaylor@prodigy.net>                                     Sun, Aug 12, 2012 at 4:35 PM
To: Clarence_Maddox@ca6.uscourts.gov

Per the Request for Counseling dated 8/1/2012 re: Amended EDR Claim of racial discrimination, harassment, and retaliation by Circuit Librarian Owen Smith that has been left open until 8/30/2012, I am requesting the following documents for review that will prove whether discrimination did occur and that I was disparately treated by Mr. Smith. The retaliation claim is addressed at the end of this email.

**Electronic mail (e-mail) e-Discovery requests**

Request No.___1___:

Produce any and all information related to e-mail with attachments.

| 1 | Repairs noted by Mr. Smith at other Satellite Libraries he visited that were submitted to GSA for fiscal-year end repairs from 8/17/2011-9/15/2011. |
|---|---|
| 2 | Any announcements sent to other Satellite Libraries regarding fiscal-year end repair deadlines from 8/17/2011-9/15/2011 |

Request No.___2___:

Produce any and all information related to e-mail with attachments.

| 1 | Email between Philleatra Gaylor and Tom Vanderloo about WestlawNext add-on charges, Insertlinks (Insert Links), WestCheck.com from 8/17/2011-7/2/2012 |
|---|---|
| 2 | Email between Philleatra Gaylor and Owen Smith about WestlawNext add-on charges, Insertlinks (Insert Links), WestCheck.com from 8/17/2011-7/2/2012 |
| 3 | Any recording, email, correspondence that took place between Leslie Campbell and Owen Smith concerning the email sent by Philleatra Gaylor to Sara Whitehead (Westlaw Trainer) re: WestlawNext from 8/17/2011-7/2/2012 |

Request No.___3___:

Produce any and all information related to e-mail with attachments.

| 1 | Requests and approvals for travel to remote libraries from Mary Andrews (Grand Rapids Satellite Librarian who had a similar territory to mine) to Owen Smith during evaluation period ending 6/17/2012. |
|---|---|
| 2 | Travel to remote libraries requirement communicated by Owen Smith to Mary Andrews in any performance evaluation or email from 7/18/2011-7/2/2012 |

Case 1:15-CV-00185-PLR-CHS   Exhibit D-1

Request No.___4___:

Produce any and all information related to e-mail with attachments.

| 1 | Email sent from all 6th Circuit Librarians to Owen Smith and Tom Vanderloo regarding the new website plus responses back to the librarians from 8/17/2011-7/2/2012 |
|---|---|

Request No.___5___:

Produce any and all information related to e-mail with attachments.

| 1 | Email sent by Owen Smith to any Chief Judge regarding the Judge Portrait Project for district courts from 8/17/2011-6/17/2012 |
|---|---|
| 2 | Email from all Satellite Librarians who responded about the need for the use of a ladder and the accommodations made by Owen Smith or Susan Hopkins from 8/17/2011-6/17/2012 |
| 3 | Email with doctor's note in reference to Philleatra Gaylor climbing steps or ladders due to radiation treatments from 12/29/2011-6/17/2012 |

Request No.___6___:

Produce any and all information related to e-mail with attachments.

| 1 | Emails between Paul Calico and Owen Smith that I was not copied concerning Mr. Smith's intention not to bully me in the future from 3/14/2012-7/2/2012 |
|---|---|

Request No.___7___:

Produce any and all information related to e-mail with attachments.

| 1 | Emails or communications that contained my name (Philleatra Gaylor) from Owen Smith and Tom Vanderloo post-mediation resolution from 6/8/2012-7/2/2012 |
|---|---|

Request No.___8___:

Produce any and all information related to e-mail with attachments.

| 1 | Agenda from Satellite Librarian Training Session in Cincinnati, OH held 7/18/2011-7/19/2011 |
|---|---|
| 2 | Final minutes from Satellite Librarian Training Session in Cincinnati, OH held 7/18/2011-7/19/2011 |
| 3 | Emails to Philleatra Gaylor from Owen Smith concerning iPad or iPad Gurus from 7/18/2011-7/2/2012 |

**In reference to the retaliation claim, I am attaching documents that infer retaliation premeditation, including the 6/25/2012 Performance Evaluation with Mr. Smith's and my follow-up comments to illuminate that no matter what I said in the evaluation, it had no impact on Mr. Owen Smith's premeditated retaliatory decision to terminate me because I exercised my 1st Amendment right to**

Case 1:15-CV-00185-PLR-CHS   Exhibit D-1

grieve harassment. Also, Mr. Smith wanted to make certain I would not be in attendance at the Satellite Training session to be held in Cincinnati, OH July15-16, 2012, so he knew he had to act quickly by provoking conflict. As such I was fired without due process on 7/2/2012. See sequence of events prior to 6/25/2012 Performance Evaluation.

| 5/31/2012 | Technical Assistant's last day after giving 2 weeks notice, Mr. Smith does not notify me as to whether he intends to replace or eliminate the position |
|---|---|
| 6/8/2012 | Mediation resolution finalized |
| 6/13/2012 | Mr. Smith emails me regarding Judge Collier and the Judge Portrait Project that was settled during mediation. He dredges up the past with the intent to provoke me, thus ignoring his agreement not to bully me |
| 6/14/2012 | After an email reminding Mr. Smith about his intention not to bully me in the future, he writes that he is my supervisor and that my response was inappropriate and insubordinate conduct (see Retaliatory evidence Pt 2) |
| 6/14/2012 | Although 2 other Satellite Librarians were being evaluated, I was the only one he wrote an email to describing the performance evaluation process and said "if" you are in Cincinnati (see Retaliatory evidence Pt 2) |

Please have these documents produced by 8/24/2012 or inform me of any deadline extensions.

Without the review of these documents or an acknowledgment that the document does not exist can a fair determination be made as to whether racial discrimination did occur and I was disparately treated. In regards to retaliation, all evidence indicates that Mr. Smith did retaliate in violation of the 6th Circuit Personnel Policy after I filed a grievance against him.

Sincerely,

Philleatra Gaylor
770-317-3143

Please confirm receipt.  Thanks as always.