
**FILED**

MAR 14 2016

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PHILLEATRA GAYLOR )
)
)
Plaintiff (Pro Se) )
)
) Case No. 1:15-cv-185
)
v. ) Judge Travis R. McDonough
)
) Magistrate Judge Christopher H. Seger
OWEN SMITH, et al., )
)
Defendants )
)

# NOTICE OF APPEAL

Notice is hereby given this 12th day of March, 2016 that Philleatra Gaylor hereby appeals to the United States Court of Appeals for the Sixth Circuit from the United States District Court of Eastern Tennessee at Chattanooga from the judgment entered in this action on the 12th day of February, 2016 dismissing without prejudice Plaintiff's claims for violations of the Sixth Circuit's EDR Plan.

Philleatra Gaylor,
Pro Se Litigant
740 Lakeview Ave NE
Atlanta, GA 30308
770-317-3143

cc: Opposing Counsel ☐
    Court of Appeals ☐

IN THE UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

**PHILLEATRA GAYLOR**,

        Plaintiff-Appellant (Pro Se)

v.

**OWEN G. SMITH**, Circuit Librarian, U.S. Court
of Appeals for the Sixth Circuit; **CLARENCE MADDOX**,
Circuit Executive, U.S. Court of Appeals for the Sixth Circuit;
**MEGAN LYNESS**, General Services Administrator,
U.S. General Services Administration.

        Defendants - Appellees

---

Appeals from the United States District Court
for the Eastern District of Tennessee
at Chattanooga
Case No. 1:15-cv-185-TRM-CHS

---

Philleatra Gaylor appeals from the dismissal without prejudice in the judgment entered

in this action on the 12th day of February, 2016 of her claims against Appellees for

violations of the Sixth Circuit's Employment Dispute Resolution (EDR) Plan. According

to the Memorandum Opinion, on page 6 (PageID#453), the Court states that while the

district court does not provide for an appeal of Appellant's EDR dispute, however, *In re*

*Golinski* (a case cited by Plaintiff-Appellee) is a decision from the Chief Judge of the Ninth Circuit acting within that Circuit's EDR plan. Also in accord with this finding is, *In the Matter of Brad Levenson*, 587 F.3d 925, 929 (2009) that states:

> 'Under the EDR Plan, I (the circuit court) have the authority to order a necessary and appropriate remedy" for the violation of a substantive right protected by the Plan... The remedy may be retrospective, prospective, or both, and must be "tailored as closely as possible to the specific violation involved." '

As affirmed by these two cases, the United States Court of Appeals for the Sixth Circuit has subject matter jurisdiction over EDR dispute matters whether retrospective, prospective, or both.

## SUMMARY OF ISSUE

The federal question is whether Appellees Owen G. Smith, Circuit Librarian; Clarence Maddox, Circuit Executive ; and Megan Lyness who works for GSA but was ordered to oversee Appellant's workspace inspection for mold by contractor Clifford L. Mosley, Representative, Environmental Health Services violated the Sixth Circuit's EDR Plan?

Even though Megan Lyness (hereafter "Lyness") is an employee of GSA, "an individual may be held liable for aiding and abetting discriminatory or retaliatory conduct, especially if that person is concealing information or supplying false statements. Lyness knew that another employee on the same floor as Appellant suffered similar symptoms, even internal bleeding but failed to disclose this material fact.

The EDR provides the following protections that Appellant alleges Appellants violated:

CHAPTER VI— OCCUPATIONAL SAFETY AND HEALTH PROTECTIONS

§ 1 General -Each employing office shall **provide to its employees a place of employment which is free from recognized hazards that cause or are likely to cause death or serious physical harm to employees**.

CHAPTER VIII- WHISTLEBLOWER PROTECTION

§ 1 General — **Any employee who has authority to take, direct others to take, recommend, or approve any personnel action shall not, with respect to such authority, take or threaten to take an adverse employment action with respect to an employee** (excluding applicants for employment) **because of any disclosure of information to** —

A. the appropriate federal law enforcement authority, or

B. a supervisor or managerial official of the employing office, a judicial officer of the court, or the Administrative Office of the United States Courts, by the latter employee, which that employee reasonably and in good faith believes evidences a violation of any law, rule, or regulation, or other conduct that constitutes gross mismanagement, a gross waste of funds, or a substantial and specific **danger to public health or safety**, provided that such disclosure of information

Definition — For purposes of this Chapter, an "**adverse employment action**" means a **termination**, demotion, transfer, or reassignment; loss of pay, benefits, or awards; or any other employment action that is materially adverse to the employee's job status, compensation, terms, or responsibilities, or the employee's working conditions.

CHAPTER IX -REPORTS OF WRONGFUL CONDUCT

A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct as defined in Chapter II,

§ 1 must follow the procedures set forth in Chapter X of this Plan. Judges and employees are encouraged to report wrongful conduct to the court's EDR Coordinator or chief judge, as soon as possible, before it becomes severe or pervasive. Retaliation against any employee making a report of wrongful conduct is prohibited. The person receiving such a report has the responsibility to notify the EDR Coordinator in writing as soon as possible. **The EDR Coordinator shall promptly inform the chief judge and unit executive of any report.** The chief judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated. All individuals involved in the investigation shall protect the confidentiality of the allegations of wrongful conduct to the extent possible. Information and records about the allegations shall be shared on a need-to-know basis. Employees found by the chief judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan, may be subject to disciplinary action, including termination.

§ 5 General provisions and protections

A. **Prohibition against retaliation** - Claimants under this Plan have the right to be free from retaliation for filing a claim pursuant to this Plan. Likewise, any person who participates in the filing or processing of a claim, such as an employment dispute resolution coordinator, mediator, witness, representative, or co-worker, is also entitled to freedom from retaliation.

## BACKGROUND

1.  Appellant Philleatra Gaylor (hereafter, "Appellant") was hired as Satellite Librarian for the Eastern District of Tennessee which includes Chattanooga, Knoxville, Greeneville, and Winchester by Kathy Welker (former Circuit Librarian) on August 16, 2010. Owen Smith (hereafter, "Smith") succeeded Welker as Circuit Librarian and became Appellant's supervisor on approximately October 17, 2010. Smith is headquartered in Cincinnati, OH so the only contact plaintiff had with Smith was principally email.

2.  Smith's first visit to Chattanooga, TN to meet with Appellant was on August 17, 2011. After the visit, Appellant's relationship with Smith quickly deteriorated. Appellant was the sole African American Satellite Librarian for the U.S. Court of Appeals for the Sixth Circuit.

3.  The working relationship became so hostile until Appellant filed an amended grievance against Smith on March 14, 2012 alleging harassment, discrimination, and bullying.

4.  A mediation conducted by Paul Calico (Circuit Mediator) was arranged by Clarence Maddox (Circuit Executive) (hereafter, "Maddox") to settle the

grievance against Smith by the Appellant. On June 8, 2012, an agreement was reached with Smith stating he had no intention of bullying Appellant in the future.

5. On July 2, 2012, (less than 25 days after agreeing to the mediation terms), Smith drove to Chattanooga, TN and terminated Appellant's employment without notice.

6. On August 28, 2012, Appellant was reinstated with back pay after filing an Employee Dispute (EDR) Complaint alleging and proving acts of discrimination against her by Smith in addition to his disregard and breach of the mediation agreement.

## RETALIATION

After an EDR Complaint is filed, there is no provision in the EDR Plan that disavows the claimant of protection from retaliation. In other words, there is no expiration date on protection from retaliation. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 ruled that courts must look at whether the alleged adverse employment action is material in that it would dissuade a reasonable individual from reporting harassment or discrimination.

There should be no doubt that Appellant has indeed satisfied the elements of retaliation:

- a "protected activity" was engaged in (that is, opposed discrimination or participated in a discrimination proceeding);

Appellant filed a complaint against Smith for discrimination, harassment, bullying;

After Appellant suffered exposure to mold and became ill, she requested ADA accommodations and contacted OSHA when Smith did nothing.

Appellant suffered injuries in the workplace which prompted the filing of a worker's compensation claim.

- the alleged retaliator knew of the protected activity;

Smith remained informed.

- the claimant was subjected to an adverse employment action; and

Termination is an adverse employment action.

- a causal connection existed between the protected activity and the adverse employment action.

The adverse employment action occurred in close proximity to Appellant's protected activities. Plus there is the cover-up of wrongdoings Memorandum dated February 27, 2015 that Maddox sent to Chief Judge R. Guy Cole, Jr. to justify his actions.

A barrage of false statements followed by termination if an employee files a grievance would definitely dissuade any reasonable person from using the EDR Plan. Also, finding out after you have been terminated on February 25, 2014 that your Long Term Disability (LTD) insurance policy was cancelled November 3, 2013 while you were still employed and premiums were being deducted from your pay statements is retaliation at its pinnacle. Both Smith and Maddox knew that I had filed a LTD claim on November 19, 2013. Since I did not cancel it, I was told by Federal First that the only other entity that could cancel the policy was Human Resources under the control of Maddox. Despite several inquiries, Maddox evaded the question, refusing to answer. Maddox also told Appellant that she would receive all inspection reports, only to withhold the last report that confirmed mold in the workplace and terminating her after learning it was not a figment of her imagination. I am sure a reasonable person would find that retaliatory. Before I conclude, I will dissect Maddox's Memorandum to Judge Cole to highlight the

inconsistencies and false statements because I feel I did not go far enough in the affidavit in demonstrating Maddox's innate ability to falsify legal documents.

I have mentioned repeatedly that besides being the Circuit Executive, Maddox acts as EDR Coordinator, Hearing Officer, and Judge Designee in EDR disputes so can abuse power as he pleases. Maddox also has the power to suspend or limit access to an internal grievance procedure which also constitutes an "adverse action." Appellant never got a chance to meet with a judge, judges panel, etc. All information concerning Appellant was delivered through conversations with Smith summarized by Maddox without investigation or verification as to what statements made by Smith were masquerading as facts.

## IMPORTANT FACTS

1. Appellant was terminated without any prior notice of any material acts of insubordination that Maddox can list in detail with honest supportive evidence;
2. Appellant never balked at instructions and challenged Smith's authority to give them; in fact Appellant had little contact with Smith after being reinstated;
3. Avoidance of Smith was the tactic Appellant used after reinstatement but responded by email to any information that Smith requested;
4. Appellant had no clue that Smith had planned to change the terms and conditions of her job by reducing her judge count from 15 to 6, leaving her with the smallest judge count of all Satellite Librarians;
5. Harassment, false statements, claims of insubordination only surfaced after Appellant became ill with mold symptoms and filed an ADA accommodation request after consulting with her doctor of over 10 years.

6. No notice was ever given to Appellant of any alleged acts of subordination and what they constituted—only a Proposal of Adverse Action.

## MEMORANDUM TO JUDGE COLE WITH APPELLANT COMMENTS

OFFICE OF THE CIRCUIT EXECUTIVE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
503 POTTER STEWART UNITED STATES COURTHOUSE
100 EAST FIFTH STREET
CINCINNATI, OHIO 45202-3988

CLARENCE MADDOX
CIRCUIT EXECUTIVE

TELEPHONE (513) 564-7200
FAX (513) 564-7210
WEBSITE: www.ca6.uscourts.gov

February 27, 2015

MEMORANDUM

TO: Chief Judge R. Guy Cole, Jr.

FROM: Clarence Maddox

SUBJECT: Philleatra Gaylor

Philleatra Gaylor was terminated for insubordinate conduct in December 2013 citing a number of reasons. Following is a summary of activity related to Ms. Gaylor's employment as satellite librarian in Chattanooga. **Maddox evades the specific insubordinate reasons by just saying many.**

Ms. Gaylor was employed under the supervision of the Circuit Librarian in 2010. Issues between Ms. Gaylor and the Circuit Librarian, Owen Smith, came to my attention during February 2012. Around that time, Mr. Smith counseled Ms. Gaylor about what he noted to be performance issues. Thereafter, Ms. Gaylor responded by submitting a document which she indicated to be a grievance against Mr. Smith. Mr. Smith referred the matter to me for resolution inasmuch as he did not believe it would be appropriate for him to handle the matter given the supervisor - subordinate relationship. Following clarification from Ms. Gaylor, I referred the matter to the Chief Circuit Mediator, Paul Calico, in the hope that he might use his skills to resolve the issues between Gaylor and Smith. Following several conversations, Mr. Calico reported the matter to be resolved on June 2012. **Smith never counseled me as required by correct personnel practices. He criticized and belittled me. The matter was never resolved due to Smith's inability to be trusted.**

Thereafter, Mr. Smith gave a written evaluation to Ms. Gaylor, as well as other occasional instructions. As a general statement, Ms. Gaylor balked at those instructions and challenged Mr. Smith's authority to give them. Mr. Smith deemed the behavior to be insubordinate, and he took action to terminate Ms. Gaylor in July 2012. Upon my review of the matter after it occurred due to Ms. Gaylor's accusations of bad faith action and disparate treatment by Mr. Smith, it was determined that Ms. Gaylor would be reinstated to her previous position with no loss in pay. Thereafter, I was asked to monitor the relationship between Mr. Smith and Ms. Gaylor periodically to determine whether they were getting along satisfactorily.

**The real reason Smith terminated me was that the former TNED Chief Judge hired a professional to take pictures of portraits. Smith wanted me at 59 yrs old having radiation treatments to take the pictures that were about 72 ft. high.**

During the initial monitoring period, Mr. Smith's reports were fairly benign; however, Ms. Gaylor's responses denigrated Mr. Smith's leadership and direction. I read them to reflect disagreement with Mr. Smith's management prerogatives - nothing more serious. I counseled Ms. Gaylor (a) to stop writing to me about differences of perception and (b) to respect the manager - subordinate relationship. One of Ms. Gaylor's chief complaints during the period was that Mr. Smith was reducing the scope of her responsibilities through the assignment of judges' support to other satellite libraries, notwithstanding the fact that sharing of library resources was being encouraged at the national level. **All false statements except the reducing of my judge count so that I woulld have the lowest judge count among librarians.**

In the summer of 2013 Ms. Gaylor provided a note from her physician indicating she suffered allergies common to the Chattanooga area and she sought an accommodation to work from the home she maintained in Atlanta, over 100 miles from the courthouse in Chattanooga.

GOVERNMENT EXHIBIT
CASE NO. 1:15-cv-185
EXHIBIT NO. F

Chief Judge R. Guy Cole, Jr.
February 27, 2015
Page 2

Before we could respond to her request, Ms. Gaylor claimed (through OSHA) she suffered from sick-building syndrome, and that was the cause of her respiratory issues. Upon receipt of that claim, we sought to make arrangements through General Services Administration and the Federal Occupational Health Service (FOHS) for inspection of the Chattanooga satellite library location where Ms. Gaylor was assigned to work. We also excused Ms. Gaylor from her duties with pay until we received a preliminary report from General Services Administration. The FOHS report was benign in its findings, and that documentation was provided to Ms. Gaylor.

*Smith was in no hurry to assess my workplace. I was ordered to return before any inspection took place.*

Shortly after her sick-building syndrome claim was made, Ms. Gaylor suffered an accident at work which she attributed to the medication she was using to control her respiratory issues. According to Ms. Gaylor, she cut her finger while using a paper cutter, causing a significant wound and accompanying pain and discomfort. The incident resulted in a Workers Compensation claim. She was relieved from duties the following week in any event due to our perceived need to inspect the working conditions she had called into question.

*I was only given administrative leave once.*

Ms. Gaylor, upon her return to work, continued to be difficult insofar as taking direction and accepting a decision that she would not be accommodated by being allowed to work from home due to her sick-building syndrome claim or other allergic conditions. Notwithstanding counseling to comport herself in a more appropriate fashion, Ms. Gaylor continued to respond to both Mr. Smith and myself in an insubordinate fashion. She was twice reminded of the appropriate procedures for lodging workplace disputes or complaints. *False statements. Maddox indicates that reminding someone you are still ill is insubordination.*

Ultimately, Mr. Smith advised Ms. Gaylor in writing that she was to be terminated due to her insubordinate conduct, and informed her of her rights under the adverse action process. Ms. Gaylor requested a hearing over which I presided, and Ms. Gaylor appeared from the United States Courthouse in Atlanta, Georgia via videoconference. That hearing was recorded. Ms. Gaylor received notice following the hearing the adverse action terminating her employment was confirmed, and informing her of her right to appeal to the chief circuit judge. An appeal was subsequently requested, and the hearing record and notice were provided to the chief judge for action. Following the chief judge's action affirming the decision to terminate, final documentation was submitted to the Administrative Office of the United States Courts for processing. *Maddox acted as EEO Coordinator, Hearing Officer, and Chief Judge designee. The Chief Judge only received the type of discombobulated memos Maddox now writes--really a mirage of how he wanted events to unfold to justify his actions.*

A more detailed summary and package of documents prepared last summer is included for your ready reference.

CM/lmb

*In addition, if my concerns about workplace mold were unfounded, why would Smith and Maddox cover-up the November 4, 2013 report from the inspector identified microbial growth (mold), moisture condensation around the window, water stained ceiling tile, dust and water stains in and around the two sprinkler heads, and standing water in the mechanical room?*

## CONCLUSION

Violations of the EDR Plan should not be tolerated. This is the only vehicle that an aggrieved employee can use for a fair and just judicial review. For the reasons

stated above, I ask that U.S. Court of Appeals for the Sixth Circuit provide the relief requested by Appellant in her original complaint.

Respectfully submitted on the 12th day of March, 2016,

Philleatra Gaylor, Appellant (Pro Se)
740 Lakeview Ave NE
Atlanta, GA 30308
(770) 317-3143
pjoycegaylor@gmail.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 12th day of March, 2016, I mailed by U.S. Mail first class a copy of this Notice of Appeal.

/s/Philleatra Gaylor, Appellant (Pro Se)

# PRIORITY MAIL EXPRESS™

**FASTEST SERVICE IN THE U.S.**

**FOR DOMESTIC AND INTERNATIONAL USE**

EK 707 227 357 US

**UNITED STATES POSTAL SERVICE® | PRIORITY MAIL EXPRESS™**

## CUSTOMER USE ONLY

**FROM:** (PLEASE PRINT) PHONE (770) 317-3143
Philleatra Gaylor
740 Lakeview Ave NE
Atlanta, GA 30308

**PAYMENT BY ACCOUNT** (if applicable)

### DELIVERY OPTIONS (Customer Use Only)

☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com or local Post Office™ for availability.

**TO:** (PLEASE PRINT) PHONE (423) 752-5200
Clerks Office  ~~X-RATED~~
U.S. Courthouse
900 Georgia Ave
Rm 309
Chattanooga, TN 37402

**ZIP + 4®** (U.S. ADDRESSES ONLY)
37402

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 Insurance Included.

### ORIGIN (POSTAL SERVICE USE ONLY)

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| **PO ZIP Code** 30308 | **Scheduled Delivery Date** (MM/DD/YY) 3-14-16 | **Postage** $ 72.95 | |
| **Date Accepted** (MM/DD/YY) 3-12-16 | **Scheduled Delivery Time** ☐ 10:30 AM ☐ 3:00 PM ☒ 12 NOON | **Insurance Fee** $ | **COD Fee** $ |
| **Time Accepted** 12:0 ☐ AM ☐ PM | **10:30 AM Delivery Fee** $ | **Return Receipt Fee** $ | **Live Animal Transportation Fee** $ |
| **Weight** lbs. 1.0 ozs. ☐ Flat Rate | **Sunday/Holiday Premium Fee** $ | **Total Postage & Fees** $ 22.95 | |
| | **Acceptance Employee Initials** SS | | |

### DELIVERY (POSTAL SERVICE USE ONLY)

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature | |
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature | |

LABEL 11-B, JANUARY 2014    PSN 7690-02-000-9996    **3-ADDRESSEE COPY**